# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 23-1782

|  |  |
|---|---|
| ZIYAD N. OMAR, as Parent and Natural Guardian of M.Z.O., a Minor,<br><br>　　　　　　　Petitioner,<br><br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>　　　　　　　Respondent. | Chief Special Master Corcoran<br><br>Filed: January 5, 2026 |

*Matthew F. Belanger, Faraci Lange, LLP, Rochester, NY,* for Petitioner.

*Mallori Browne Openchowski, U.S. Department of Justice, Washington, DC,* for Respondent.

### RULING ON ENTITLEMENT[1]

On October 11, 2023, Ziyad Omar, as parent and natural guardian of M.Z.O., filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). ECF No. 1. Petitioner alleges that M.Z.O. suffered a right shoulder injury related to vaccine administration ("SIRVA") following a tetanus-diphtheria-acellular pertussis ("Tdap") vaccine she received on December 8, 2020. Petition at ¶1-2. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

For the reasons set forth below, I find that M.Z.O. more likely than not received the Tdap vaccine in her right arm, as alleged. Therefore, and because Respondent does not contest the other requirements of a Table SIRVA claim, Petitioner is entitled to compensation under the Vaccine Act.

## I.     Relevant Procedural History

On July 26, 2024, seven months after the case was initiated, Respondent filed a Rule 4(c) Report in which he argued that Petitioner could not establish a Table SIRVA case because M.Z.O. received the Tdap vaccine in unaffected *left*, rather than right arm (which received treatment). Rule 4(c) Report at 6. On September 5, 2024, Petitioner filed a motion for a Ruling on the Record Regarding Entitlement ("Mot."). ECF No. 31. Respondent filed a response ("Resp.") and Petitioner filed a reply ("Repl.") on October 28, 2024. ECF No. 32-33. The matter is now ripe for adjudication.

## II.    Factual History

On December 8, 2020, M.Z.O. (then 11 years old) received a Tdap vaccine during a well child visit with her primary care provider. ("PCP"). Ex. 3 at 6. The record notes that Petitioner translated for M.Z.O., as "Arabic [was] spoken at home." *Id.* The electronic vaccine record produced by the provider indicates that the vaccine was administered in Petitioner's left deltoid.[3] Ex. 9 at 6. Petitioner has stated, however, that M.Z.O. "received the vaccination in her right deltoid." Ex. 1 at ¶6. He recalled that "the injection site was red and swollen the day after the injection," and that M.Z.O. complained "that she could not lift her right arm." *Id*. at ¶7.

On December 17, 2020, M.Z.O. returned to her PCP for evaluation of right arm pain. Ex. 3 at 13. Petitioner reported that M.Z.O. had "received a Tdap shot in [her] right arm," that the arm was "still tender," and that M.Z.O. was "complaining . . . that she cannot raise her arm up." *Id.*  He reported that the "injection site was red and swollen the day after the shot, but that ha[d] resolved." *Id.* On exam, the provider noted that M.Z.O. reported that it "hurt to lift her arm." *Id*. at 14. The pediatrician recommended ibuprofen, suggested heat for pain, and said to follow up if symptoms worsened. *Id*. at 15.

On December 31, 2020, M.Z.O. returned to her PCP's office because her pain "had not resolved." Ex. 3 at 19. Petitioner reported that M.Z.O. would "not raise her arm or use it." *Id*. When the PCP asked M.Z.O. to take a book with her right hand, she declined, saying that she "can not [sic] hold the book with [her] right hand." *Id*. M.Z.O. was referred

---

[3] M.Z.O.'s PCP indicated that it had provided all documentation regarding the site of vaccination. *See* Ex. 12.

for x-rays and to orthopedics for an evaluation. *Id.* at 21. The PCP noted that the "pain appears to be associated with Tdap vaccine." *Id*.

On February 26, 2021,[4] M.Z.O. saw an orthopedist for an "evaluation of right shoulder pain following a flu injection back in December of this last year." Ex. 4 at 23. There was no reported history of prior pain or injury. *Id.* Physical exam showed that M.Z.O. was "exquisitely tender over the previous injection site" and had "limited range of motion because of pain." *Id.* He ordered x-rays and referred M.Z.O. to physical therapy. *Id.* at 24.

M.Z.O. began physical therapy on March 18, 2021. Ex. 4 at 38. Petitioner reported that M.Z.O. "received a vaccine at school and since has had pain" in her right shoulder at the injection site. *Id.* During examination, M.Z.O. experienced pain and significant limitations with active range of motion, but had full passive range of motion. *Id*. at 39. Treatment was planned for six to eight weeks. Id.

On May 28, 2021, M.Z.O. returned to her orthopedist for continued right shoulder pain, though her range of motion had "improved significantly since beginning therapy." Ex. 4 at 29. The doctor advised that M.Z.O should continue her exercises and that her symptoms would "continue to improve with time" *Id.*

On August 16, 2021, M.Z.O. returned to her PCP for a well-child visit. Ex. 5 at 6. Petitioner reported that M.Z.O. received a Tdap vaccine in December 2020, and a "few days later she had a red and swollen arm" that she subsequently could not move. *Id.* He reported that she still experienced tenderness at the injection site and weakness in her right arm. *Id*. Petitioner declined recommended vaccinations due to Petitioner's "immunization reaction in her right arm." *Id*. at 7. The doctor advised Petitioner to follow up with the orthopedist about M.Z.O.'s right arm pain after physical therapy. *Id*.

M.Z.O. returned to the orthopedist on October 22, 2021. Ex. 4 at 25. Petitioner reported that M.Z.O. "complain[ed] of pain with any physical activity" and that physical therapy "made her no better." *Id.* The orthopedist ordered an MRI, which showed showed a "small amount of fluid in the subacromial subdeltoid bursa." *Id.* at 32. She followed up again on December 29, 2021. Ex. 4 at 27. Petitioner reported that M.ZO. had deltoid pain and weakness when raising her arm. *Id.* The doctor reviewed the MRI and noted that it did not "explain [the] source of her pain." *Id.* He referred her to a physical medicine and rehabilitation specialist. *Id*.

On February 2, 2022, M.Z.O. and her father saw a physical medicine and rehabilitation specialist. Ex. 10 at 11. Petitioner reported that M.Z.O. received a vaccine

---

[4] Respondent's brief states that this appointment occurred on February 20, 2021, but the medical record shows that it was on February 26, 2021. Resp. at 3; Ex. 4 at 23.

for school and "two weeks later she couldn't move her arm." *Id.* The doctor diagnosed M.Z.O. with bursitis and right shoulder pain. *Id.* He proposed an ultrasound, and depending on the results, a cortisone injection, but Petitioner deferred due to an upcoming overseas trip. *Id.* at 13.

Over one year later (March 24, 2023), M.Z.O. and her father returned to the orthopedist. Ex. 4 at 4. Petitioner reported that M.Z.O. had "had ongoing right shoulder pain ever since she had a flu vaccine in December 2020." *Id*. He reported that she had continued doing her home exercises without improvement. *Id.* On exam, M.Z.O. was "hypersensitive to light tough" over the deltoid and had pain with range of motion. *Id.* at 5. The doctor considered whether M.Z.O.'s symptoms were "more neurological" and ordered a cervical spine MRI, which was normal. *Id*. at 4; Ex. 7 at 4-5.

On July 25, 2023, M.Z.O. and her father returned to the physical medicine and rehabilitation specialist. Ex. 10 at 7. Reaching and raising her arm aggravated M.Z.O.'s pain, and home exercises provided no relief. *Id.* M.Z.O. had an ultrasound on August 25, 2023, which revealed a suspected partial-thickness bursal surface tear of the supraspinatus and trace subacromial-subdeltoid bursopathy. *Id.* at 4-5. A steroid injection was recommended. *Id*. at 5.

On June 18, 2024, M.Z.O. and her father returned to the physical medicine and rehabilitation specialist for a reevaluation. Ex. 11 at 10. Petitioner was "anxious" and "fearful that things ha[d] worsened." *Id.* Physical examination showed no "abnormalities" with range of motion but positive impingement testing. *Id.* at 12. They returned on June 27, 2024, for a cortisone injection, but M.Z.O. was "hesitant to proceed because of fear of the injection and worsening of symptoms" and declined to have the injection. *Id.* at 7-8. The doctor noted that "there are no other treatments that [he could] recommend at this time." *Id*. at 8.

### III.   Applicable Legal Standards

The Vaccine Act requires that a petitioner demonstrate that "residual effects or complications" of a vaccine-related injury continued for more than six months. Vaccine Act §11(c)(1)(D)(i). A petitioner cannot establish the length or ongoing nature of an injury merely through self-assertion unsubstantiated by medical records or medical opinion. §13(a)(1)(A). "[T]he fact that a petitioner has been discharged from medical care does not necessarily indicate that there are no remaining or residual effects from her alleged injury." *Morine v. Sec'y of Health & Human Servs.*, No. 17-1013V, 2019 WL 978825, at *4 (Fed. Cl. Spec. Mstr. Jan. 23, 2019); *see also Herren v. Sec'y of Health & Human Servs.*, No. 13-1000V, 2014 WL 3889070, at *3 (Fed. Cl. Spec. Mstr. July 18, 2014).

4

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, at *19. And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569

F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### IV.    Finding of Fact - Situs of Vaccination

The record evidence supports the conclusion that M.Z.O. more likely than not received the December 8, 2020 vaccination in her right arm. Only one record – an electronic list of vaccinations maintained in M.Z.O's PCP's medical record - suggests administration in the left arm. *See* Ex. 9 at 6. The remaining records, however, consistently show that M.Z.O. reported right shoulder pain that began after vaccination and that she attributed this pain to the Tdap vaccine administered into her right shoulder. *See* Ex. 3 at 13 ("received a Tdap shot in [her] right arm" and that the arm was "still tender,"); Ex. 4 at 4 ("had ongoing right shoulder pain ever since she had a flu vaccine in December 2020"), 23 ("evaluation of right shoulder pain following a flu injection back in December of this last year"), 38 ("received a vaccine at school and since has had pain" in her right shoulder at the injection site); Ex. 5 at 6 (received a Tdap vaccine in December 2020 and a "few days later she had a red and swollen arm" and then was unable to move her arm). In addition, M.Z.O. received treatment only to her right shoulder, including physical examinations, imaging, and physical therapy.

Petitioner also filed an affidavit in which he stated that M.Z.O. "received the vaccination in her right deltoid," and that her arm became "red and swollen" the next day. Ex. 1 at ¶6-7. The record of that pediatric visit confirms that Petitioner accompanied M.Z.O. Ex. 3 at 6. Thus, the *only* evidence of vaccination in Petitioner's left arm is the electronic vaccination record in her pediatrician's files, which is outweighed by the contradicting evidence in this case. Accordingly, I find it more likely than not that the Tdap vaccine case was administered to M.Z.O.'s right shoulder, as alleged.

### V.    Ruling on Entitlement

   a. *Requirements for Table SIRVA*

Other than the argument above regarding the site of vaccination, Respondent has not contested Petitioner's proof on the specific elements of a Table SIVRA. In light of

Respondent's position and the evidence of record, I find that Petitioner has provided preponderant evidence to establish that M.Z.O. suffered a Table SIRVA injury.

    b. *Additional Requirements for Entitlement*

Because Petitioner has satisfied the requirements of a Table SIRVA, he need not prove causation. Section 11(c)(1)(C). However, he must satisfy the other requirements of Section 11(c) regarding the vaccination received, the duration and severity of injury, and the lack of other award or settlement. Section 11(c)(A), (B), and (D).

The vaccine record shows that M.Z.O. received a Tdap vaccine on December 8, 2020. Ex. 3 at 6; Ex. 9 at 6; Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i) (requiring administration within the United States or its territories). Additionally, Petitioner has stated that M.Z.O. (nor her parents) has not filed any civil action or received any compensation for her vaccine-related injury, and there is no evidence to the contrary. Ex. 1 at ¶20; *See* Section 11(c)(1)(E) (lack of prior civil award). Respondent has not dispute that the severity requirement has been established, and the filed medical records corroborate more than six months of residual symptoms. *See e.g.*, Ex. 4 at 25; Ex. 5 at 6; *see also* Section 11(c)(1)(D)(i) (statutory six-month requirement). Therefore, Petitioner has satisfied all requirements for entitlement under the Vaccine Act.

## Conclusion

**Based on the entire record in this case, I find that Petitioner has provided preponderant evidence satisfying all requirements for a Table SIRVA. Petitioner is entitled to compensation in this case. A separate damages order will be issued.**

    **IT IS SO ORDERED.**

                                           <u>s/Brian H. Corcoran</u>
                                           Brian H. Corcoran
                                           Chief Special Master